IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| ELISABETH MANGANI-KASHKETT, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-13-1215 |
| | * | |
| EDOUARD J.P. BOUQUET, *et al.*, | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

# MEMORANDUM OPINION

This Memorandum Opinion addresses (1) the Motion to Dismiss Count IV: Intentional Infliction of Emotional Distress, ECF No. 9, and supporting Memorandum, ECF No. 9-1, that Defendants Brodsky, Renehan, Pearlstein, Lastra, & Bouquet, Chartered ("BRPLB") and Edouard J.P. Bouquet, Esquire (collectively, the "Bouquet Defendants") and Defendants Clifford, Debelius, Bonifant, Fitzpatrick & Hyatt ("CDBFH") and E. Joseph Fitzpatrick, Esquire (collectively, the "Fitzpatrick Defendants") filed; (2) Plaintiff Elisabeth Mangani-Kashkett's Acceptance of Rule 68 Offer of Judgment, ECF No. 15; and (3) the Motion to Compel Arbitration and to Stay Proceedings, ECF No. 10, and supporting Memorandum, ECF No. 10-1, that the Bouquet Defendants filed; Plaintiff's Opposition and supporting Memorandum, ECF No. 14; and the Bouquet Defendants' Reply, ECF No. 16, and Request for Hearing, ECF No. 17. A hearing is not necessary with regard to any of these filings. *See* Loc. R. 105.6. For the reasons stated herein, Defendants' Motion to Dismiss Count IV is GRANTED; the Bouquet Defendants' Motion to Compel Arbitration and to Stay Proceedings is GRANTED IN PART AND DENIED

IN PART; and Plaintiff's Acceptance of Rule 68 Offer of Judgment is deemed not to be an acceptance of the Offer of Judgment.

## I. BACKGROUND

Plaintiff filed this lawsuit against Defendants, claiming that she retained Mr. Bouquet to represent her before the Maryland Court of Special Appeals; Mr. Bouquet estimated that his services would cost about $10,000; and BRPLB billed her for $55,406.40, of which she paid $14,117.29. Compl. ¶¶ 3, 5, 8, 17, ECF No. 2. Plaintiff disputed the remainder of the charges. *Id*. ¶¶ 18. According to Plaintiff, CDBFH, in a letter signed by Fitzpatrick, sent her a debt collection notice regarding the outstanding balance. *Id.* ¶¶ 28. Plaintiff's Complaint includes a claim for breach of contract against the Bouquet Defendants (Count I), claims for violations of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201 – 14-204 ("MCDCA"), and the Federal Fair Debt Collections Practices Act, 15 U.S.C §§ 1692–1692p ("FDCPA"), against the Fitzpatrick Defendants (Counts II and III, respectively); and a claim for intentional inflict of emotional distress, against all Defendants (Count IV). *Id*. ¶¶ 48, 50, 52, 54.

## II. MOTION TO DISMISS

All Defendants filed a Motion to Dismiss Count IV: Intentional Infliction of Emotional Distress. Plaintiff has not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2.a. By failing to file a response within the time allotted, Plaintiff implicitly acknowledges that the Motion to Dismiss is meritorious. Moreover, a review of Plaintiff's allegations and the relevant case law shows that Plaintiff fails to state a claim for intentional infliction of emotional distress.

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Plaintiff's fourth count is for intentional infliction of emotional distress. "In Maryland, the tort of intentional infliction of emotional distress is "rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.'" *Bestkoff v. Bank of America, N.A.*, No. CCB-12-1998, 2012 WL 4960099, at *5 (D. Md. Oct. 15, 2012) (citing *Snyder v. Phelps*, 580 F.3d 206, 231 (4th Cir. 2009) (Shedd, J., concurring) (citation omitted)). To plead this cause of action, a plaintiff must show that (1) the defendants' conduct was "'intentional or reckless,'" as well as "'extreme and outrageous'"; (2) there was "'a causal connection between the wrongful conduct and the emotional distress'"; and (3) the emotional

distress was "'severe.'" *Lasater v. Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). "'Extreme and outrageous'" conduct is such that is """so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."""" *Id*. (quoting *Harris*, 380 A.2d at 614 (internal citation omitted)).

Defendants insist that "Plaintiff has failed to allege any actions by Defendants that constitute 'extreme and outrageous conduct.'" Defs.' Mem. 3. Plaintiff attributes her emotional distress to "the imposition of charges equaling more than five times the amount she'd expected, against her account"; "the imposition of charges which were too costly for her to pay and which were made in violation of her contract for retaining Mr. Bouquet's services"; "the imposition of charges against her account, which she had no practical means to oppose, since her billing disputes went unaddressed by the defendants"; and the "imposition of late-fee interest and . . . charges made to the account *subsequent* to the completion of legal work performed in her case." Compl. ¶¶ 19–21. These purported actions do not rise to the level of conduct in *Dick v. Mercantile-Safe Deposit 7 Trust Co.*, 492 A.2d 674, 677 (Md. Ct. Spec. App. 1985), in which a defendant threatened to "attach [the plaintiffs'] home and wages," called the plaintiffs and shouted at them, and inquired about their marital status. The Maryland Court of Special Appeals concluded that the defendant's conduct was "rude, discourteous, uncivil, and even to some extent unreasonable," but not "extreme and outrageous." *Id.* Nor are Defendants' alleged acts as offensive as the defendant's conduct in *Bestkoff*, 2012 WL 4960099, at *5, in which Bank of America refused "to return the $1100 it withdrew" even after the plaintiff "explained his dire need for the money to pay a fine and avoid arrest." Plaintiff has failed to allege extreme and outrageous conduct by Defendants. *See Bestkoff*, 2012 WL 4960099, at *5; *Dick*, 492 A.2d at

4

677. This insufficiency in Plaintiff's pleading is enough to "defeat the cause of action." *Gibbons v. Bank of Am. Corp.*, No. JFM-08-3511, 2012 WL 94569, at *8 (D. Md. Jan. 11, 2012). Therefore, Defendants' Motion to Dismiss Count IV is GRANTED. *See* Fed. R. Civ. P. 12(b)(6).

### III.  OFFER OF JUDGMENT

Defendants Fitzpatrick and CDBFH (the "Fitzpatrick Defendants") filed an Offer of Judgment on April 30, 2013, offering $1,500 to "include[] any and all damages, of any style or sort, available under any Federal or State cause of action, as well as costs, and reasonable attorney's fees accrued . . . that Plaintiff and her counsel may obtain from these Defendants." ECF No. 12. The filing is a clear and unambiguous offer of judgment as to all claims against the Fitzpatrick Defendants, i.e., Plaintiff's claims against the Fitzpatrick Defendants for violations of the MCDA and the FDCPA and for the Maryland common law tort of intentional infliction of emotional distress.

Plaintiff filed "Plaintiff's Acceptance of Rule 68 Offer of Judgment" on May 14, 2013. Pl.'s Acceptance 3. It is styled as an acceptance of the Fitzpatrick Defendants' Offer of Judgment, but it is anything but an acceptance, as it appears to require the Court to construe the Offer of Judgment. In Plaintiff's view,

> The Offer of Judgment is open to interpretation: It offers an amount pursuant to statutory requirements of the Federal Fair Debt Collections Practices Act and with regard to that amount states: "This amount includes any and all damages, of any style or sort, available under any Federal or State cause of action", a statement which is not true, since additional damages *are indeed* available under Maryland law and Federal law and additional causes of action have been plead.

*Id.* ¶ 8. Plaintiff asks the Court to "[c]onstrue the ambiguity in Defendants' Offer of Judgment in favor of the Plaintiff," such that "this Offer of Judgment is only with regard to Plaintiff's claims

5

under the Federal Fair Debt collections Practices Act and not with regard to other claims." *Id*. at 2.

>Fed. R. Civ. P. 68(a) provides:
>
>a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

In *Bentley v. Bolger*,[1] the United States District Court for the Central District of Illinois considered the plaintiff's attempt to accept the defendant's Offer of Judgment in part. 110 F.R.D. 108, 113 (C.D. Ill. 1986). Preliminarily, the court concluded that the part of the offer that the plaintiff rejected was not valid because it "expressly eschewed attorney's fees," when attorney's fees were "properly available" and therefore could not be explicitly excluded. *Id*. at 112–13. Nonetheless, the court held that "[t]he Plaintiff's partial acceptance is no acceptance at all." *Id*. at 113–14. It reasoned that modifying the Offer of Judgment as the plaintiff proposed "so as to imply that attorney's fees be awarded . . . would contradict the Defendant's clear intent and would impose on the Defendant unexpected costs." *Id*. at 113. Further, the court observed that, if courts "reconstitute[d] Offers of Judgment," such judicial action "would seriously discourage defendants from making such offers by exposing defendants to the risks of liability not contemplated in their offers." *Id*. The court noted that "courts have generally adopted without formally considering the proposition that an acceptance of an Offer of Judgment pursuant to Rule 68 must be unconditional." *Id.*

---

[1] This Court's research has not uncovered any other cases addressing a partial acceptance of an Offer of Judgment, nor have counsel cited to any.

I adopt the reasoning of *Bentley*, 110 F.R.D. at 113–14. Here, the Fitzpatrick Defendants clearly intended their Offer of Judgment to encompass all claims against them, such that its acceptance would release them from any further litigation on those claims. Plaintiff cannot choose to accept their monetary offer while still pursuing claims against them and exposing them to possible additional liability. Plaintiff's "Acceptance of Rule 68 Offer of Judgment" simply is not an acceptance. Therefore, the Fitzpatrick Defendants' Offer "is considered withdrawn." Fed. R. Civ. P. 68(b).

## IV. MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

Also pending before this Court is the Bouquet Defendants' Motion to Compel Arbitration and to Stay Proceedings. The Bouquet Defendants assert that the Court should compel arbitration with regard to the counts against them[2] because "a valid arbitration agreement exists between the parties, and Plaintiff's claims against [the Bouquet Defendants] are encompassed within the scope of the arbitration agreement." Bouquet Defs.' Mot. ¶ 1. Plaintiff argues that she did not enter into an arbitration agreement with BRPLB, and therefore "[t]he court cannot compel the Plaintiff to arbitrate matters concerning [BRPLB]." Pl.'s Opp'n ¶¶ 1–2. In Plaintiff's view, the only arbitration agreement she entered was between her and "the defunct Law Offices of Edouard J.P. Bouquet," and that agreement "is not valid, was waived by failure to employ it when disputes arose; was waived by the intervening hiring of a debt-collector, was void at inception, and no longer exists." *Id*. ¶¶ 3–4. She contends that Defendant Bouquet "transferred his law firm, but failed to disclose this material fact to the Plaintiff" and "failed to inform Plaintiff that costs of legal representation would be greatly increased" or "to get

---

[2] Count I for breach of contract is the only count remaining against the Bouquet Defendants, as I have dismissed Count IV for intentional infliction of emotional distress.

7

Plaintiff's consent to this material change." Pl.'s Mem. ¶¶ 8–11. Plaintiff does not cite any legal authority for any of her conclusory arguments; her entire Memorandum is devoid of citations.

Curiously, as Defendants note, Plaintiff's breach of contract claim is premised on the existence of the very contract that she now decries as "not valid," "void at inception," and "no longer exist[ing]," and the claim is against not only Bouquet but also BRPLB, which she now claims is not a party to the contract. Bouquet Defs.' Reply 2. Defendants assert: "Under the arguments Plaintiff has set forth, either she has no breach of contract claim against [BRPLB] and the claim should be dismissed, or the arbitration provision controls, and [BRPLB] and Mr. Bouquet's Motion to Compel Arbitration should be granted." *Id*. at 4. Defendants also argue that "Mr. Bouquet is a signatory to the Agreement, and therefore he may enforce the arbitration provision." *Id*. at 3.

Md. Code Ann., Cts. & Jud. Proc. § 3-206 provides that, with exceptions not relevant here, "a provision in a written contract to submit to arbitration any controversy arising between the parties in the future is valid and enforceable . . . ." If a court determines that an arbitration "agreement exists, it shall order arbitration." *Id.* § 3-207. Further, it is well-settled Maryland law that "when the plain language of an arbitration clause covers the issue in dispute, the court must compel arbitration." *Essex Corp. v. Susan Katharine Tate Burrowbridge, LLC*, 940 A.2d 199, 208 (Md. Ct. Spec. App. 2008), *disagreed with on other grounds in Addison v. Lochearn Nursing Home, LLC*, 983 A.2d 138 (Md. 2009); *see NRT Mid-Atl., Inc. v. Innovative Props., Inc.*, 797 A.2d 824, 833 (Md. Ct. Spec. App. 2002) ("Arbitration clauses will be freely enforced when there is an agreement to arbitrate the subject matter of the dispute."), *disagreed with on other grounds in Addison v. Lochearn Nursing Home, LLC*, 983 A.2d 138 (Md. 2009); *see also Gold Coast Mall, Inc. v. Larmar Corp.*, 468 A.2d 91, 95 (Md. 1983) ("Arbitration is a matter of

contract which the parties should be allowed to conduct in accordance with their agreement."). *Accord Bel Pre Med. Ctr., Inc. v. Frederick Contractors, Inc.*, 320 A.2d 558, 565 (Md. Ct. Spec. App. 1974) (By enacting the Uniform Arbitration Act, "the General Assembly established a policy in favor of the settlement of disputes through the arbitration process . . . . [S]uits to compel arbitration and suits to stay court action pending arbitration, are now to be viewed as "favored" actions.").

Plaintiff and Mr. Bouquet signed a Retainer Agreement on December 16, 2009, which provided:

> **Maryland Arbitration Agreement**: You and I hereby agree that any controversy arising between us after the date of this agreement regarding any aspect of our attorney-client relationship will be submitted by us to binding arbitration proceedings for resolution of such controversy. This process is governed by the statutory provisions contained in § 3-201 et seq. of the Maryland Code, Courts and Judicial Proceedings Article. We further agree that any arbitration or litigation proceedings between us shall take place in Montgomery County, Maryland, and that the laws of the State of Maryland shall be applicable to such proceedings. . . .

Retainer Agr. 4–6, Bouquet Defs.' Mem. Ex. 1, ECF No. 10-2. This is a valid and enforceable arbitration agreement between the parties. Cts. & Jud. Proc. § 3-206. Additionally, Plaintiff's remaining claim against the Bouquet Defendants, Count I for breach of contract, certainly pertains to the parties' attorney–client relationship, as Plaintiff claims that the Bouquet Defendants breached the terms of the Retainer Agreement governing the provision of legal services to Plaintiff. Compl. ¶¶ 12–14. Therefore, the arbitration agreement "covers the issue in dispute," and I "must compel arbitration." *Essex Corp.*, 940 A.2d at 208; *see* Cts. & Jud. Proc. § 3-207.

The only remaining issue is whether the Bouquet Defendants are parties to the arbitration agreement. I find that Mr. Bouquet, as a signatory to the Retainer Agreement, may enforce the

arbitration provision against Plaintiff, also a signatory. *See* Cts. & Jud. Proc. § 3-206. Additionally, I find that BRPLB, although not a signatory, may enforce the arbitration provision of the Retainer Agreement under equitable estoppel. *See Westbard Apts., LLC v. Westwood Joint Venture, LLC*, 954 A.2d 470, 478 (Md. Ct. Spec. App. 2007).

> "[E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory [sic]. When each of a signatory's claims against a nonsignatory [sic] makes reference to or presumes the existence of the written agreement, the signatory's claims arise ... out of and relate ... directly to the [written] agreement, and arbitration is appropriate."

*Westbard Apts.*, 954 A.2d at 478 (quoting *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999) (internal citations and quotation marks omitted)). The Retainer Agreement is a written agreement to which Plaintiff is a signatory, and Plaintiff "presumes the existence of" and relies on the terms of the Retainer Agreement to state her claim for breach of contract against BRPLB. *See id.* (citations and quotation marks omitted); Compl. ¶¶ 5–7, 10–14. The Retainer Agreement contains an arbitration clause, and therefore, "'arbitration is appropriate.'" *Westbard*, 954 A.2d at 478 (citation omitted).

Moreover, "'application of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory [sic] and one or more of the signatories to the contract.'" *Id.* (quoting *MS Dealer Serv. Corp.*, 177 F.3d at 947 (internal citations and quotation marks omitted)). In such circumstances, if only the claims against the signatory were arbitrated, "'the arbitration proceedings [between the two signatories] would be rendered meaningless and the . . . policy in favor of arbitration effectively thwarted.'" *Id.* (quoting *MS Dealer Serv. Corp.*, 177 F.3d at 947 (citation omitted)). Plaintiff alleges that BRPLB, a nonsignatory, and its employee, Mr. Bouquet, a signatory, breached the Retainer Agreement when

10

"persons from [BRPLB] (other than Mr. Bouquet) began to work on the Plaintiff's appeal, without her prior consent," Compl. ¶ 12; "a lesser-qualified attorney" prepared Plaintiff's appellate brief, *id.* ¶¶ 12–13; and BRPLB "wrongfully billed" Plaintiff "in violation of various provisions of the December 2009 contract," *id.* ¶ 14. These allegations describe "substantially interdependent and concerted misconduct." *Westbard*, 954 A.2d at 478 (citations and quotation marks omitted). For this reason, also, BRPLB may enforce the arbitration provision. *See id.* The Bouquet Defendants' Motion to Compel Arbitration with regard to Count I is GRANTED.

When a court orders arbitration, the court "shall stay any action or proceeding involving an issue subject to arbitration." Cts. & Jud. Proc. § 3-209(a). Notably, "[i]f the issue subject to arbitration is severable, the court may order the stay with respect to this issue only." *Id.* § 3-209(b). Here, Count I for breach of contract is independent from Counts II and III for violations of the MCDCA and the FDCPA: The operative facts are distinct, and Count I is alleged against the Bouquet Defendants, whereas Counts II and III are alleged against the Fitzpatrick Defendants. *Compare* Compl. ¶¶ 5–18 *with* Compl. ¶¶ 26–47. Therefore, the Bouquet Defendants' Motion to Stay is GRANTED as to Count I, but not as to Counts II and III.

## V. CONCLUSION

In sum, the Court's rulings are as follows:

- Defendants' Motion to Dismiss Count IV is GRANTED, and Count IV: Intentional Infliction of Emotional Distress is DISMISSED with prejudice;

- Plaintiff's Acceptance of Rule 68 Offer of Judgment is deemed not to be an acceptance, and the Fitzpatrick Defendants' Offer of Judgment is considered withdrawn; and

- The Bouquet Defendants' Motion to Compel Arbitration and Stay Proceedings is GRANTED IN PART AND DENIED IN PART. Specifically, arbitration is ORDERED as to Count I and the proceedings are STAYED as to Count I only. The Court will issue a Scheduling Order and a Discovery Order with regard to Counts II and III.

A separate order shall issue.

Dated: June 18, 2013

/S/
Paul W. Grimm
United States District Judge

lyb